556

45 So.2d 703

**LOWREY et al. v. MINES.**

**I Div. 380.**

Supreme Court of Alabama.

March 2, 1950.

Rehearing Denied April 20, 1950.

Barnett, Bugg & Lee, of Monroeville, for appellants.

C. L. Hybart and R. L. Jones, of Monroeville, for appellee.

**STAKELY, Justice.**

This is a suit in statutory ejectment brought by Mrs. J. L. Mines (appellee) against Hunter Waters (one of the appellants). Before trial J. F. B. Lowrey (one of the appellants), as landlord of Hunter Waters, asked and obtained permission of the court to make himself a party defendant along with Hunter Waters. The property involved is a lot of land 60 feet by 210 feet situated in Monroe County, Alabama.

The case was tried before a jury and resulted in a verdict and judgment for the plaintiff and this appeal is from that judgment.

The appellee claims title to the property through a conveyance from her father O. M. Crook, who acquired the curtesy to the same through his deceased wife Laura Crook. Laura Crook acquired the property by deed from E. L. Mosley in 1914 and is claimed to have occupied the premises from that time until 1945. She died on the 17th day of June 1946 and on the 17th day of November 1947 O. M. Crook sold and conveyed the property to the appellee.

By decree of the Circuit Court of Monroe County, in Equity, dated July 22, 1935, the register was ordered to convey all the right, title and interest of Laura C. Crook with others in the lands to Reconstruction Finance Corporation. The deed was made by the register to the Reconstruction Finance Corporation pursuant to this decree on July 22, 1935. On February 12th, 1937 the Reconstruction Finance Corporation conveyed the property to J. F. B. Lowrey.

Tendencies of the evidence showed the following. From July 1935 to the 16th day of April 1944, Mrs. Laura Crook lived in Burnt Corn, Alabama, and during all this time she lived in the house on the premises here involved with the exception of a short period when she was living at the place known as the Watkin's Place at which time the premises were being occupied by her tenants Mr. and Mrs. Mines. In April 1944 Mrs. Laura Crook moved to Atlanta and left the property in charge of her agent Mr. Roberson, who lived in the immediate vicinity. She locked the house and left the keys in his possession. He agreed to look after the premises and keep the same for her. He did this until Sam Lowrey, an agent of J. F. B. Lowrey, came to him and requested him to turn over the keys to him. Mr. Roberson refused to give up the keys to Sam Lowrey and thereupon on November 20, 1945 Sam Lowrey broke into and entered the house. During all of this period Laura C. Crook was openly and notoriously claiming the property as her own as against the whole world. Tendencies of the evidence also showed that no one was in possession of the property at the time J. F. B. Lowrey got his deed to the property from Reconstruction Finance Corporation and that Laura C. Crook was not claiming ownership of the property.

The record further shows without dispute that Mrs. Laura Crook assessed the property and paid the taxes thereon every year beginning in 1935 through and including 1945.

In the original deed of E. L. Mosley to Laura C. Crook hereinabove referred to it appears that an error was made in the description of the land. The appellee introduced a decree dated June 7, 1935, reforming the description of the foregoing deed so as to correctly show the lands that E. L. Mosley had sold and conveyed to Laura Crook.

The only question presented by appellants is whether the court committed error in allowing the introduction in evidence of the deed from E. L. Mosley and the decree correcting the description in the same.

■ The Mosley deed and foregoing decree were introduced by the appellee for the purpose of showing claim under color of title. We think that the court was in error in this regard because at the time Laura C. Crook was in possession of the property

under the Mosley deed and the decree of reformation all right, title and interest therein which she had acquired under the Mosley deed and the decree correcting the description therein, was divested out of her and conveyed pursuant to decree of the court to the Reconstruction Finance Corporation. While the point does not appear to have been passed on in this state, authorities in other states clearly hold that one cannot successfully claim adverse possession under color of title where the claimant has been divested of the color of title relied upon by sale under judgment or decree. 2 Corpus Juris Secundum, Adverse Possession, § 69, p. 585; Peerless Department Stores v. George M. Snook Co., 123 W.Va. 77, 15 S.E.2d 169, 136 A.L.R. p. 135.

But it is urged that the action of the court should not result in reversal of the judgment because in accordance with Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, allowance in evidence of the Mosley deed and the decree of reformation as color of title did not probably affect injuriously substantial rights of the defendants. The contention is based on the idea that the issue of adverse possession was necessarily found by the jury in favor of the plaintiff. Further that the undisputed evidence showed that Mrs. Laura Crook annually assessed the property and paid the taxes during the ten year period in which she claimed to have been in adverse possession. And further that adverse possession confers title either in the event there was such possession under color of title or in the event the property was listed for taxes and the taxes paid as aforesaid.

■ Upon a careful consideration of the proposition the court is of the opinion that it cannot be said that the error was error without injury. Under the present statute, § 828, Tit. 7, Code of 1940, adverse possession cannot confer or defeat title to land unless there is shown at least one of the three alternatives set forth in the statute.

Cox v. Broderick, 208 Ala. 690, 95 So. 186. Color of title is one of the three alternative requirements, but where color of title is shown in accordance with the requirements of the statute, the function of such proof does not end. Color of title is not only one of the three alternative prerequisites to proof of adverse possession, but it is a material circumstance in showing adverse possession itself and the extent thereof. 2 C.J.S., Adverse Possession, § 60, p. 580; 2 C.J.S., Adverse Possession, § 216, p. 823; 1 Am.Jur. p. 899; Proprietors of Kennebec Purchase v. Laboree, 2 Me. 275, 2 Greenl. 275, 11 Am.Dec. 79; Jackson v. Demont, 9 Johns. 55, 6 Am.Dec. 259.

■ In view of the foregoing we cannot say that the allowance of color of title in evidence did not have a substantial bearing in the minds of the jury on the issue of adverse possession. Adverse possession was a disputed issue of fact and it could be that the jury would not have resolved this issue in favor of the plaintiff unless it was reasonably satisfied that such possession was under color of title, regardless of the listing of the property for taxes.

■ In the case at bar the Reconstruction Finance Corporation became the purchaser at a judicial sale in which the interest of Laura Crook was conveyed. Accordingly we call attention for purposes of another trial to the principle established in our cases that the possession of Laura Crook is presumed to be subordinate to the legal title and to constitute her holding adverse, it must be shown that the owner had knowledge of the adverse holding or it must be so open and notorious as to raise a presumption of notice, the equivalent of actual notice. Robinson v. Allison, 97 Ala. 596, 12 So. 382, 604; Sellers v. Farmer, 151 Ala. 487, 43 So. 967.

Reversed and remanded.

BROWN, FOSTER and LIVINGSTON, JJ., concur.