90 So.2d 760

**Eugene W. HAGAN et al.**

v.

**John J. CROWLEY, as Executor, et al.**

**I Div. 584.**

Supreme Court of Alabama.

Nov. 15, 1956.

Gordon & Jansen, Mobile, for appellants.

Mell A. Frazer and Caffey, Gallalee & Caffey, Mobile, for appellees.

GOODWYN, Justice.

This is a statutory ejectment suit brought by appellees against appellants to recover possession of a tract of land bordering on what is now known as Robinson's Bayou, near Dog River in Mobile County. The case was tried without the intervention of a jury, the evidence being taken orally before the trial judge. From a judgment in favor of plaintiffs, the defendants prosecute this appeal.

It is insisted by appellants that judgment should have been in their favor because, first, appellant Hagan has acquired title to the property by adverse possession, and second, title to the property is outstanding in a third party. The other appellant-defendant, Rachel Hayes, is Hagan's tenant in actual occupancy of the property.

In the final analysis, the validity of appellants' defenses turns upon questions of fact. We have carefully examined the evidence which, on the points in issue, is conflicting. From a consideration of this conflicting evidence the trial court resolved the factual issues in favor of the plaintiffs. When, as here, testimony is taken orally before the trial court, the established rule is that a finding by such court on the facts has the effect of a jury's verdict and will not be disturbed on appeal unless plainly and palpably wrong or against the great preponderance of the evidence. Spruiell v. Stanford, 258 Ala. 212, 216, 61 So.2d 758, and cases there cited. In the light of this rule, we see no basis for disturbing the trial court's decision.

### Adverse Possession

It appears to be established by the evidence, and the parties apparently concede, that title to the disputed tract was vested in one Daniel Kelly in 1859. Plaintiffs made out their prima facie case by showing a direct chain of title from Kelly to them. There is no question about the property in dispute being included in the instruments in the chain of title.

Briefly, the evidence as to adverse possession is as follows: Defendant Hagan received a deed from Eleanor S. Burgett, a widow, dated October 1, 1936, which he claims conveys to him the disputed property together with an additional tract. This deed was not recorded until 1942, some six years before the filing, in 1948, of the ejectment suit. Hagan listed the property for taxation and paid the taxes for the years 1937 through 1948. In 1946 he built two small houses on the tract, one of which was occupied by defendant Rachel Hayes with Hagan's permission. He testified that

he did not rent to the people on the place, that "they were just free to stay there, so they could take care of the boats, and we would go down there on Sunday or something like that fishing, we would have a boat." Prior to 1946 there was no one living on the property and it was not put to any use except as an occasional fishing and picnicking spot. There is some evidence that people kept boats anchored on the water front, with Hagan's permission, but it is not clear how long this had been done, nor just how it had been so used. Hagan testified that he had lived in Mobile and had been regularly engaged in business there for the past 20 years.

Code 1940, Tit. 7, § 828, provides in part as follows:

"Adverse possession cannot confer or defeat title to land unless the party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for ten years before the commencement of the action; or unless he and those through whom he claims shall have annually listed the land for taxation in the proper county for ten years prior to the commencement of the action, if the land is subject to taxation; or, unless he derives title by descent cast, or devise from a predecessor in the title who was in possession of the land. * * *"

■■ There appears to be no question that Hagan has fulfilled the requirements of § 828 by listing the property for taxation for ten years prior to the commencement of this action. However, such listing for taxation is not alone sufficient to give him title. It must also be shown that he has been in actual adverse possession of the land during the ten years he listed the property for taxation. It seems to us that what was said in Spradling v. May, 259 Ala. 10, 14–15, 65 So.2d 494, 498, is of controlling influence here, viz.:

"Where one claims title to land through an unbroken chain of record title against another who relies upon adverse possession under color of title, the rule is well established. A very strict burden to establish his title rests upon the one claiming by adverse possession.

"The law places such a high dignity upon a regular documentary title and requires such strict formalities to evidence it that a necessary concomitant is that in order to work a divesture of that title by adverse possession, all the essential elements must be proven by the stated measure of proof, and that proof must show that there has been an actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period under claim of right of the definite tract involved.

"Following are some of the authorities: Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705; Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483, 170 A.L.R. 882; Barbaree v. Flowers, 239 Ala. 510, 196 So. 111; Murphy v. Leatherwood, 221 Ala. 61, 127 So. 843; McDaniel v. Sloss-Sheffield Steel & Iron Co., 152 Ala. 414, 44 So. 705; Chastang v. Chastang, 141 Ala. 451, 37 So. 799.

"It is also the established law that rare and widely separated acts, regardless of how clearly they might have indicated a purpose to claim title, do not show a possession in wild land sufficient for the purpose of acquiring title by adverse possession. The possession must be continuous. Tensaw Land & Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411. Also, occasional acts of entry upon land and cutting timber or other desultory entries and acts over the land are not sufficient to show possession against the true owner so as to ripen into title by adverse possession. Green v. Marlin, 219 Ala. 27, 121 So. 19; Williams v. Lyon, 181 Ala. 531, 61 So. 299; McCreary v.

Jackson Lumber Co., 148 Ala. 247, 41 So. 822." See, also, Duke v. Harden, 259 Ala. 398, 400, 66 So.2d 899.

■ It appears, as already noted, that the only possessory acts by the defendant Hagan prior to 1946 were occasional visits for fishing and picnicking, and the anchoring (for how long and how often not being made clear) of boats at the water's edge with Hagan's permission. We do not think these acts are sufficient, under the rule of our cases, to constitute such an adverse possession as is required in order to work a divestiture of one's title claimed through an unbroken chain of record title.

### Outstanding Title in Third Party

■ Briefly, the evidence on this point is as follows: As already noted, it is conceded by the parties that title to the disputed tract was vested in one Daniel Kelly in 1859 as part of a much larger tract. The evidence shows that on December 20, 1866, before Kelly's conveyance (on March 18, 1870) to plaintiffs' predecessor in title, he conveyed to one John H. Herbert, out of his lands, a tract containing three acres, more or less, it being recited in the deed that it embraces "the present location of the Herbert saw mill." Defendants contend that the disputed tract is a part of this saw mill site conveyed to Herbert and hence did not pass to plaintiffs' predecessor in title. The defendant does not connect his title with Herbert's title but seeks to prove that title to the disputed tract is outstanding in a third party and not in plaintiffs. It is well-settled that a defendant in ejectment who "[is] in possession in good faith under color of title may defend by showing an outstanding title in another with which he does not connect himself." Lathem v. Lee, 249 Ala. 532, 535, 32 So.2d 211, 214; Tapia v. Williams, 172 Ala. 18, 29, 54 So. 613; Dodge v. Irvington Land Co., 158 Ala. 91, 96, 48 So. 383, 22 L.R.A.,N.S., 1100. However, the evidence is in conflict as to whether the disputed tract is in fact included in the deed to Herbert. The description in the Herbert deed is as follows:

"Commencing at a stake due north ten chains and fifty links from a point on the division line between division numbers one and two of the McVoy tract in Township Five South Range One West said point being due west twenty-nine chains from a pine stump immediately on the east line of the Old Cedar Point Rail Road and on the division line of said Division No. 1 and 2 of the McVoy tract thence due West 5 chains to a stake, thence due north five chains more or less to Stickney Creek thence with the meanderings of Stickney Creek easterly to a point thence due South nine chains more or less to place of beginning. Containing three acres more or less and embracing the present location of the Herbert Saw Mill. Together with the right of way of a road twenty feet wide. The Southern line of said road commencing at the south east corner of the above described three acre tract and running due east to the Cedar Point Rail Road its northern line running parallel to it and distant therefrom twenty feet."

It will be noted that the north boundary of the property conveyed to Herbert is described as "following the meanderings of Stickney Creek". If the present bed of "Stickney Creek" (now called Robinson's Bayou) is in fact the only bed the creek has had, and is the "Stickney Creek" indicated in the Herbert deed, it would appear that the disputed tract is, as claimed by defendants, included in the Herbert deed. Plaintiffs, however, introduced evidence tending to show that "Stickney Creek" once had two branches, and that a strip of low, marshy land running south of the disputed area was actually "Stickney Creek" referred to in the Herbert deed. It appears that the low, marshy strip coincided with the other metes and bounds in the Herbert description more closely than the present bed of "Stickney Creek" (now known as Robinson's Bayou). It is also

**296**

to be noted that the description in the Herbert deed recites that it embraces "the present location of the Herbert Saw Mill." Hagan testified that he remembered the mill while it was still partially standing and that it was located on the tract in dispute. A registered surveyor, however, stated that he had found old brick pillars and pilings south of the disputed area, across the strip of marshy ground, indicating that the mill was situated to the south of the disputed tract. This evidence clearly presented a question of fact as to whether the tract now in dispute was actually contained in the conveyance to Herbert. In order for defendants to maintain their defense that title was outstanding in a third party it was essential that there be a finding by the court that the disputed tract was contained in the Herbert deed. The trial court, however, resolved this question in favor of the plaintiffs. Under the settled rule of review we would not be justified in disturbing the trial court's findings from the evidence.

Affirmed.

SIMPSON, MERRILL and SPANN, JJ., concur.