162 So.2d 466

**Henry Eugene RAPER**

v.

**Ruby BELK et al.**

**6 Div. 6.**

Supreme Court of Alabama.

March 26, 1964.

Cato & Hicks, Birmingham, for appellant.

**372**

Nelson Vinson, Hamilton, for appellees.

SIMPSON, Justice.

Appeal by complainant from a decree of the Circuit Court of Marion County, in Equity, denying relief in a statutory bill to quiet title.

There were three parcels of land involved. However, from the briefs filed, the only question apparent relates to "parcel two". Appellees rely upon record title by descent cast as to parcel two, whereas appellant seeks to establish title by adverse possession.

The parties stipulated that W. H. Rye and Savannah Rye died leaving as their sole and only heirs the two appellees, Luna McCullar and Ruby Belk, and Cornelia Raper, wife of appellant. The parties further stipulated that appellant has assessed for taxation in Marion County the property involved (parcel two) from the year 1947 until the filing of the bill of complaint.

Following these and certain other stipulations, unimportant here, the lower court heard the testimony ore tenus. Thus, the appeal must be considered in light of the rule that where the trial judge hears the testimony, has the witnesses before him, and observes their demeanor on the stand, his decree will not be disturbed unless it is plainly and palpably wrong. Barry v. Thomas, 273 Ala. 527, 142 So.2d 918; King v. King, 269 Ala. 468, 114 So.2d 145; Wilfe v. Waller, 263 Ala. 110, 81 So.2d 614; Puckett v. Puckett, 240 Ala. 607, 200 So. 420.

The sole question is whether appellant established title to the land involved by adverse possession as against the record title of appellees.

The governing rule is that where one claims title by adverse possession under color of title, as against one who claims title by an unbroken chain of record title, a very strict burden rests upon him who would establish title by adverse possession. Webb v. King, 268 Ala. 282, 105 So.2d 653; Spradling v. May, 259 Ala. 10, 65 So.2d 494.

The evidence tended to show the following: Appellant went into possession in 1947, constructing a house thereon and was in actual possession of this tract until 1952, at which time he went North leaving his wife behind. Then in 1955 both he and his

wife moved to Arizona because of her health. Appellant contends that he was still in constructive possession of the land because from 1952 until 1955 he temporarily left the land, leaving his family behind to care for it, and after 1955 until the commencement of this action he rented the land to two persons, Monroe Vann who occupied the property from June, 1962 until the commencement of the suit, and Luther Knight who occupied the land from August, 1961 until May, 1962. The evidence tended to show that actually his wife rented the land to the two persons above mentioned but they never paid any rent. There was contrary evidence, however, that tended to show that the land was not farmed after the year 1952.

■ It would seem that appellant had color of title to the land by annually listing it for taxation for 10 years. See § 828, Title 7, Code of Ala. 1940. However, it is apparent that appellant had not been in actual or constructive possession for a period of ten years continuously next preceding the filing of the bill of complaint; and of course, all elements of adverse possession must be proven before there can be a vesting of title. In order to work a divestiture of title by adverse possession, all essential elements must be proven by the stated measure of proof, and the proof must show that there has been an actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period under claim of right of the definite tract involved. Spradling v. May, supra; Stewart v. Childress, 269 Ala. 87, 111 So. 2d 8; Parrish v. Davis, 265 Ala. 522, 92 So.2d 897.

In Hoyle v. Mann, 144 Ala. 516, 41 So. 835, this Court held that it was error to charge the jury that if the claimant goes off the land with the intention of returning after he has established adverse possession, there is no abandonment of the land, but that to abandon it he must intend to abandon it and leave for that purpose. The Court, speaking through the elder Justice Simpson then stated:

"The very gist of the claim by adverse possession is that for 10 years the claimant has occupied the land so openly, visibly, adversely, notoriously, and continuously, that the owner is presumed to have known it. It would be a strange principle then, which would allow a man to go on the land, set up adverse possession, and then leave it, and claim that his possession remained adverse, merely because he intended to return."

The Court goes on to say that where one does leave the land "[h]e must 'keep his flag flying and present a hostile front to adverse pretensions'"; that where one leaves "the ground personally, he must leave it under circumstances indicating that he has not left possession".

■ We believe the lower court was correct in holding that adverse possession had not been established by appellant. Surely, when he left the land in 1955 going to Arizona, taking with him his wife, and the land remaining unoccupied until rented in 1961 to Luther Knight, it would have appeared to all the world that the land was unoccupied which in fact it was, for that period, and possession abandoned. Moreover, the evidence tended to show that the belongings of Savannah Rye were left stored there until her death in 1962; this would tend to negative any adverse possession during this time, for it appears that Savannah Rye was as much in possession as appellant.

We entertain the view that the decree was well supported by the evidence.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.