356 So.2d 162 (1978)
Benjamin F. COURTNEY
v.
Ocllo G. BOYKIN.
SC 2650.
Supreme Court of Alabama.
March 10, 1978.
*163 Robert A. Wills, of Owen, Ball & Wills, Bay Minette, for appellant.
Sidney H. Schell, of Pillans, Reams, Tappan, Wood, Roberts & Vollmer, Mobile, for appellee.
PER CURIAM.
This appeal is from a judgment rendered against Benjamin F. Courtney, Plaintiff-Appellant, in favor of Ocllo G. Boykin, Appellee, in an action in the nature of ejectment. The trial court found that Boykin had established title to the subject property by adverse possession, stating, in part:
"On November 29, 1976 this cause came on for trial by the Court, sitting without a jury, and after considering the record, the exhibits and testimony of the witnesses, having viewed the lot in question with the counsel for both parties on December 1, 1976, and after having studied the applicable law, the Court finds as follows:
"1. The Plaintiff, Benjamin F. Courtney, owned the property in question in this cause on April 2, 1959, by virtue of a trustee's deed from Albert I. Patrick, which deed was dated October 26, 1954, and recorded in Deed Book 214, pages 569-70, Baldwin County, Alabama records.
"2. The Plaintiff conveyed the property to Edna F. Anderson on April 2, 1959 by deed recorded in Deed Book 276, page 529, Baldwin County, Alabama records. On April 2, 1959, Edna F. Anderson executed to Benjamin F. Courtney, Plaintiff herein, a mortgage describing the subject property, which mortgage is recorded in Mortgage Book 314, page 477, Baldwin County, Alabama records.
"3. Edna F. Anderson conveyed subject property to Ocllo G. Boykin on April 24, 1959 which deed is recorded in Deed Book 288, page 258, Baldwin County, Alabama records.
"4. On June 26, 1961 Benjamin F. Courtney, acting by and through James R. Owen, as Auctioneer and Attorney-in-fact for Edna Anderson, foreclosed the aforesaid mortgage and the foreclosure deed is recorded in Deed Book 305, page 545, Baldwin County, Alabama records. Mrs. Boykin subsequently learned of the foreclosure and *164 in 1965 filed a lawsuit to clear the title by redeeming from Courtney in the U.S. District Court for the Southern District of Alabama but that Court found that it did not have jurisdiction of the cause at that time since the value of the lot was less than the $10,000.00 Federal diversity jurisdictional limit.
"5. Ocllo G. Boykin then filed a lawsuit during 1964 against Benjamin F. Courtney in the Circuit Court of Baldwin County, Alabama, in Equity (Case No. 8198) seeking to exercise her statutory right of redemption from the aforesaid foreclosure sale. This Court in 1967 entered an order sustaining a demurrer to the amended complaint; finding that the complaint could not be amended to give it equity and dismissed the complaint. No appeal was taken from this final order.
"6. The Court finds that the Defendant, Ocllo G. Boykin, has had such open, continuous, exclusive, hostile and notorious possession of the subject property as applied to the adverse holding of land by another evidence by such act and conduct as are sufficient to put a man of ordinary prudence on notice of the fact that the land in question was held by her as owner.
"7. The evidence tended to show that Mrs. Boykin and her family made use of the land in question for a variety of purposes, such as, using the property as a garbage dump; as a means of access by engaging contractors to build and maintain an asphalt road onto the property and a red clay road across the property; building and maintaining a fence across the south end of the lot; burning brush annually on the property for mosquito control; using the property as a parking area; using a bulldozer to move sand from the road and to stop the encroachment of sand upon the road; building a boardwalk over it; by maintaining a snow fence and other acts of possession; and assessing and paying the taxes. Mrs. Boykin owns both Lots 10 and 12 on either side of the lot in question and she or members of her family had built houses thereon and continued their use and occupancy as part of their compound.
"8. The possession of the Defendant, Ocllo G. Boykin, of the subject property was so open, notorious and hostile that the Plaintiff could reasonably be presumed to have notice of her possession or of her claim of title to the property which continued under color of title since April, 1959.
"9. It is the finding of this Court that the Defendant, Ocllo G. Boykin, had exclusive, open, notorious and continuous possession of the subject property coupled with color of title and the annual listing and payment of taxes for the statutory period as set forth in Code of Alabama, Title 7, Section 829 (sic) to give her title by adverse possession."
In 1965, Boykin filed a suit in the Circuit Court of Baldwin County seeking to exercise a statutory right of redemption as the vendee of the foreclosed mortgagor. Courtney's demurrer to the complaint was sustained on November 16, 1967, and the court found that the complaint could not be amended so as to give it equity. The complaint was ordered dismissed and no appeal was taken from this order.
Both Courtney and Boykin have regularly assessed and paid taxes on the property since 1959.
The only question presented is whether the trial judge's finding that Boykin had adversely possessed the tract was clearly and palpably wrong.
Title 7, § 828, Code, provides:
"Adverse possession cannot confer or defeat title to land unless the party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for ten years before the commencement of the action; or unless he . . . shall have annually listed the land for taxation in the proper county for ten years prior to the commencement of the action, if the land is subject to taxation; or unless he derives title by descent cast, or devise from a predecessor in the title who was in possession of the land."
*165 Section 828 is written in the alternative. Satisfaction of any one of the three alternatives satisfies the statute. M. C. Dixon Lumber Company, Inc. v. Mathison, 289 Ala. 229, 266 So.2d 841 (1972); and Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1972).
In addition to fulfilling the requirements of one of the three alternatives, all essential elements of adverse possession must be met. In this regard, this Court has held:
". . . In order to establish adverse possession, as against the holder of the legal title, `the law is stringent in requiring clear proof of the requisite facts. There must be, first, an actual occupancy, clear, definite, positive, and notorious; second, it must be continued, adverse, and exclusive during the whole period described by the statute; third, it must be with an intention to claim title to the land occupied.'Washburn on Real Property (4th Ed.) pp. 135, 136. `Where a party enters upon land and takes possession, without claim of title or right, his occupation is subservient to the paramount title, not adverse to it.'" McDaniel v. Sloss-Sheffield Steel and Iron Co., 152 Ala. 414, 44 So. 705 (1907).
See also, Miller v. Jones, 280 Ala. 612, 196 So.2d 866 (1967); Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962); and 2 C.J.S. Adverse Possession, § 25. Moreover, each of these elements must be shown to have existed the entire term. Miller, supra; Raper v. Belk, 276 Ala. 371, 162 So.2d 466 (1964); and Millican v. Mintz, 255 Ala. 569, 52 So.2d 207 (1951).
Because adverse possession divests title from the record titleholder, a very strict burden of proof rests upon the party claiming title by it. Dixon Lumber, supra; James v. Mizell, 289 Ala. 84, 265 So.2d 866 (1972); Hagan v. Crowley, 265 Ala. 291, 90 So.2d 760 (1956); and Webb v. King, 268 Ala. 282, 105 So.2d 653 (1958). Rare and widely separated acts do not satisfy this burden; they constitute mere transitory trespasses. Hagan, supra, and Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1972).
Boykin claimed that she had acquired title pursuant to the first alternative in Section 828under color of title for ten years. She also claimed that she adversely possessed the lot and listed it for taxation for ten years.
Title by adverse possession may be obtained by listing the property for taxation for the statutory period. Title 7, § 828, Code. The stipulation that Boykin assessed and paid taxes on the property for over ten years satisfies the first element of this alternative. This, however, does not fully satisfy this option because such listing for taxation is not alone sufficient to give her title. It must also be shown that she had been in actual adverse possession of the land during the ten years she listed the property for taxation. Hagan v. Crowley, supra. See also, Ford v. Washington, 288 Ala. 194, 259 So.2d 226 (1972); and Webb v. King, 268 Ala. 282, 105 So.2d 653 (1958).
Unquestionably, there was evidence that Boykin, as owner of Lots 10 and 12 had used subject Lot 11 in ways as indicated by the trial court's finding in paragraph 7 of his order. Appellant says, however, that possessory acts by Boykin prior to the date of the foreclosure deed should not have been considered by the trial court, and that any right, title or interest which Boykin had in the property was divested when the mortgage was foreclosed and title was vested in him, subject only to Anderson's or Boykin's statutory right of redemption, which right was not timely exercised. Courtney also contends that Boykin's possessory acts after foreclosure of the mortgage were subservient to the superior title of Courtney and were presumed permissive.
It is obvious that the trial judge considered possessory acts prior to the date of the foreclosure deed because of the findings he made in paragraph 7 of his order. Boykin, in brief, answers Courtney, as follows:
". . . Whether Mrs. Boykin was or was not holding subservient to Mr. Courtney subsequent to the foreclosure deed of 1961 is immaterial to her claim of title by prescription since twenty years possession *166 without more absolutely vests title in the person in possession. There was substantial legal evidence upon which the Judge could and did find title in Mrs. Boykin by prescription."
We hold that the trial court was clearly wrong in considering Boykin's possessory acts prior to the date of the foreclosure deed.
In holding that the findings of fact made by the judge are clearly wrong, we are guided by legal principles which were applied in two Alabama cases, namely, Lowrey v. Mines, 253 Ala. 556, 45 So.2d 703 (1950), and Waters v. Mines, 260 Ala. 652, 72 So.2d 69 (1954).
In Lowrey, the appellant's predecessor in title, Reconstruction Finance Corporation, had acquired legal title to the subject property through a Register's Deed issued upon a foreclosure on the property. The appellee's predecessor had been in actual possession of the premises and had legal title prior to the foreclosure. Either she or her agents remained in possession subsequent to the foreclosure. A jury found in favor of the appellee on her ejectment action. This court reversed.
In Waters v. Mines, supra, the case was tried again, this time on the theory of Title 7, Section 828, of listing and paying taxes for ten years prior to the commencement of the suit. Again plaintiff/appellee was successful, and once again this Court reversed and remanded. The court stated that there had not been sufficient evidence to send the case to the jury. The Court, after stating all the tendencies of the evidence concerning the adverse nature of the claim, opined:
"To have the benefit of section 828, supra, in so far as concerns this appeal, there are two principles which must be met. One is that the property must be annually listed for ten years prior to November 20, 1945; and the other is that the possession of Mrs. Crook must not only be open and notorious, but there must be an explicit disclaimer of holding the possession in subordination to the R. F. C. or its purchaser and that disclaimer must be brought home to the actual knowledge of said R. F. C. or its purchaser. In some cases it is said that this may be by such open and notorious acts of ownership as to raise a presumption of notice, the equivalent of actual notice. Lowrey v. Mines, supra; Bellenger v. Whitt, 208 Ala. 655, 95 So. 10; Yancey v. Savannah & Western R. Co., 101 Ala. 234, 13 So. 311." (emphasis added).
The effect of these decisions on the instant case is two-fold: first, the defendant Boykin was divested of any color of title for purposes of claiming under Title 7, Section 828, by the conveyance of the foreclosure deed to Courtney in 1961, and second, despite the fact that she listed and paid taxes for ten years subsequent to the foreclosure deed and prior to the commencement of this action, she could not claim that any possession that she allegedly had during that period was adverse to Courtney unless she had made a distinct disavowal of the subordinate nature of the possession, or that her acts of ownership were so open and notorious as to raise a presumption of notice.
Boykin attempts to distinguish Lowrey and Waters on the ground that Lowrey "was concerned only with the very narrow question of whether a claimant can hold under color of title when the claimant had been divested of title by a judicial decree," and Waters is "relevant only in holding that any listing of taxes prior to a judicial sale is not to be included in the required ten years.. . ." Suffice it to say that the only difference between Lowrey and Waters and this one is that the R.F.C. foreclosed its mortgage in court and got a Register's deed, and in this case, Courtney foreclosed under the powers given in the mortgage and got a foreclosure deed. We see no legal distinction.
Boykin also argues that her possession of the property was not subservient to that of Courtney and consequently no disclaimer by her was necessary to transform a permissive possession into an adverse possession. She cites Foster v. Foster, 267 Ala. 90, 100 So.2d 19, as being directly in point and supportive of her contention. The Foster case is factually distinguishable. In Foster, *167 the party claiming title by adverse possession was put in possession by an agreement between himself and the respondents' predecessor in title as a settlement of an estate problem. However, no deed was transferred. Thus, at the time the complainant was put into possession of the property, he was viewed as holding the possession of the property as against all of the world. At a subsequent point in time, the respondents' predecessors in title mortgaged the same piece of property, along with other property. Subsequently, the respondents were conveyed title to this property by a foreclosure deed. Since the complainant was placed in possession of the property prior to the existence of the mortgage, this Court found that he was not viewed as holding possession of the property in subservience to a subsequent mortgagee. The facts as established in this case are significantly different. The evidence here shows that Boykin received a deed from Anderson after Courtney gave Anderson a deed to the property and took back a mortgage. When Boykin received her deed, she was fully aware of this fact and even paid Anderson monies to be applied by her to the mortgage debt owed to Courtney. Consequently, any possession which Boykin claims to have taken in 1959, the point at which she began assessing it for taxes, after receiving a deed from Anderson, was with the actual knowledge that it was subservient to Courtney's superior interest as the mortgagee of Anderson.
We are acutely aware of the principle that when a trial judge hears a case ore tenus, as here, his findings of fact are presumed correct and will not be disturbed on appeal unless palpably erroneous or manifestly unjust. Ratliff v. Giorlando, 343 So.2d 506 (Ala.1977). We are also aware that a fact-finding based on evidence which is insufficient as a matter of law to establish adverse possession cannot stand. That principle is clearly implied in Waters v. Mines, supra, where this Court reversed a judgment based on a jury verdict, and asserted that the affirmative charge was due to be given.
The judgment is due to be reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting).
I respectfully dissent.
I, of course, agree with the majority in holding that the strict burden of proof rests upon the party claiming title by adverse possession. M. C. Dixon Lumber Company, Inc. v. Mathison, 289 Ala. 229, 266 So.2d 841 (1958). Our point of difference concerns what need be shown to prove adverse possession.
Courtney contends that Boykin could not adversely possess this lot because any color of title was effectively eliminated by the mortgage foreclosure proceeding. See Lowrey v. Mines, 253 Ala. 556, 45 So.2d 703 (1950). Thereafter, he asserts, possession is subordinate and permissive, and only becomes adverse upon disclaimer. Waters v. Mines, 260 Ala. 652, 72 So.2d 69 (1954).
As I understand Boykin's position, however, she does not claim to have acquired title by adverse possession coupled with color of title. Instead, she insists that her title has been acquired by adverse possession coupled with annually listing the land for taxation for ten years. Accordingly, I believe the principle relied upon by Courtney, though a correct statement of the law, is not applicable. See Foster v. Foster, 267 Ala. 90, 100 So.2d 19 (1958).
Moreover, I do not read either the Lowrey or the Waters case as requiring wholly new evidence of adverseness and a new commencement of the statutory period. Instead, acts which exhibit complete adverseness, when performed on separate occasions subsequent to the foreclosure sale, may be considered as evincing the requisite notice. Merely because such acts were also performed prior to the foreclosure does not *168 prevent their use as evidence of adverseness and notice since that time.
In the final analysis, the validity of the claim of adverse possession turns upon questions of fact. The evidence in this case, on the points in issue, is conflicting. From a consideration of this conflicting evidence, the trial Court resolved the factual issues in favor of Boykin. Where, as here, testimony is taken orally before the trial Court, the established rule is that the court's findings upon the facts has the effect of a jury's verdict; and, when supported by credible evidence, they will not be disturbed on appeal unless palpably wrong or manifestly unjust. Raper v. Belk, 276 Ala. 371, 162 So.2d 466 (1964); and Hagan v. Crowley, 265 Ala. 291, 90 So.2d 760 (1956). Particularly is this true where, as in this case, the trial Judge has personally viewed the property in question. Robertson v. Fincher, 348 So.2d 466, 468 (Ala.1977).
The evidence introduced at trial fully satisfies the above-mentioned standard of review. Virtually every witness called by Courtney acknowledge the presence of a single-strand barbed wire fence and a red-clay drive across the width of the property. (This drive led from an asphalt road located on a lot owned by Boykin's relatives, across the tract in question, to an adjacent lot undeniably owned by Boykin herself.) Furthermore, Boykin's witnesses testified to such copious acts of possession as bulldozing the property annually; burning off marsh grass annually; using the strip as a parking lot; and placing upon the lot a garbage dump, a fish-house, snow fences, a road to the beach, birdhouses and a boardwalk. Though none of these acts, taken alone, would satisfy the strict burden of proof, when taken collectively, as they must, they evince a clear intent to claim the property adversely and reflect such open, notorious, and exclusive possession as to justify the trial Court's decree. See W. T. Smith Lumber Company v. Cobb, 266 Ala. 146, 94 So.2d 763 (1957); and Chastang v. Chastang, 141 Ala. 451, 37 So. 799 (1904). Therefore, I would affirm the judgment of the trial Court.